IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 09-cv-00992-CMA-MJW

KANDIS JATKO,

    Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY, a Connecticut Foreign Corporation, and
WASHINGTON GROUP INTERNATIONAL, INC., SHORT TERM DISABILITY PLAN,
an ERISA welfare benefit plan,

    Defendants.

## ORDER AFFIRMING DENIAL OF ERISA BENEFITS

This is a disability income benefits dispute in which Plaintiff is seeking short-term disability benefits pursuant to § 1132(a)(1)(b) of the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1416. The matter is before the Court on Cross-Motions for Summary Judgment filed by Plaintiff Kandis Jatko and Defendants Aetna Life Insurance Company and Washington Group International, Inc. Short-Term Disability Plan (Doc. ## 22, 24, and 25.) This matter is also before the Court on Plaintiff's Request for Ruling on Motion for Summary Judgment, or Alternatively Request for a Pre-Trial Conference (Doc. # 41). The motions are ripe for ruling.

## I. BACKGROUND[1]

Plaintiff worked as a "Control Room Supervisor" at Washington Group International, Inc. ("WGI") and participated in WGI's self-funded Short-Term Disability Plan (the "Plan"), which is governed by ERISA. During the relevant time period, the Plan was administered first by Broadspire Services, Inc. ("Broadspire") and, later, by Aetna Life Insurance Company ("Aetna"), Broadspire's successor-in-interest. (Rec. 56, 842.) The Plan defines "disability" in relevant part:

> "Total disability" or "totally disabled" means you are unable to perform the material and substantial duties of employees' own occupation because of illness or injury; if not working at any job for wages or profit and [are] under the regular care of a physician.
>
> "Partial disability" or "partially disabled" means you are unable to work your normal work schedule at your own occupation, you are employed at your own occupation or at another occupation, and you are under the regular care of a physician.

(Rec. at 954.)

The Plan further states:

> If Broadspire doesn't receive objective medical information that supports your absence within one week, Broadspire will ask you to encourage your doctor to provide that information such as lab results, x-rays, and office visit notes. If Broadspire has not received the necessary medical information within two weeks, the claim will be denied.

(Rec. 1032.)

---

[1] Unless otherwise noted, the following facts are undisputed and taken from the Administrative Record.

Pursuant to the Plan, short term disability ("STD") benefits begin on the eighth consecutive day that an individual is totally or partially disabled. STD benefits may continue for up to 26 weeks. (Rec. 953.) The Plan grants discretionary authority to the claims administrators to interpret its terms and determine a participant's entitlement to benefits. (Rec. 984.)

A.  **PLAINTIFF'S MEDICAL HISTORY**

On June 19, 2006, Plaintiff began to experience pain on her right side, just behind her lower ribs. (Rec. 40.) On June 21, 2006, Plaintiff visited her primary treating physician, Dr. Corey McCarty with complaints of severe pain in her lower stomach, bloating, pressure, nausea, lack of appetite, cold sweats, and diarrhea. (Rec. 257.) Based on his explanations, Dr. McCarty noted,

> She [was severely] bloat[ed] and gassy yesterday and [is] slightly better today . . . . [She] is nauseated, but [is not] vomiting [and shows no signs of] fever.

*Id.*

On June 29, 2006, Plaintiff returned to Dr. McCarty's office with complaints of continuing pain in her right upper quadrant. Subsequently, a hepatobiliary scan revealed Plaintiff's gallbladder ejection fraction was abnormal and indicative of biliary dyskinesia. (Rec. 293.) On August 24, 2006, Plaintiff underwent an endoscopy which revealed gastric ulcers, and biopsies were performed for further testing. (Rec. 299.) The endoscopy was performed by gastroenterologist, Dr. David Gatof, who did not recommend a removal of the gallbladder because he surmised the pain was due to peptic ulcer disease. (Rec. 299.) Plaintiff was prescribed "Aciphex" for the peptic ulcers. However, the drug made her consistently drowsy and ill, and caused her to

3

suffer constant headaches. (Rec. 40.) Although another drug that would have less adverse effects was available, Plaintiff could not afford the medication under her insurance policy. *(Id.)* Due to the continued pain, Plaintiff ceased working full-time on August 24, 2006, and applied for short-term benefits from Washington Group Short-Term Disability Plan, listing biliary dyskinesia as the cause of her disability.

On August 30, 2006, Dr. McCarty diagnosed Plaintiff with ulcers and cholelithiasis [gallstones] and indicated he was unable to release Plaintiff to work until her pain decreased. (Rec. 313.) On this same day, Dr. McCarty referred Plaintiff to Dr. Edward Medina, a specialist in surgery. Dr. Medina noted that it was "unclear" as to what extent the biliary dyskinesia contributed to her symptoms. (Rec. 465.)

While providing treatment to Plaintiff for her peptic ulcers, on October 6, 2006, Dr. McCarty completed a Certification of Health Care Provider form for Plaintiff's leave of absence from work pursuant to the Family Medical Leave Act ("FMLA"), pursuant to which Dr. McCarty stated that Plaintiff was unable to perform work of any kind "from 8/24/06 to present, 0 hrs. per day were recommended (until pain gone or improved)." (Rec. 320.)

On October 11, 2006, Plaintiff underwent a colonoscopy, which resulted in her referral to surgeon Dr. Richard Fox for removal of her gallbladder. (Rec. 306.) On October 27, 2006, Dr. Fox removed Plaintiff's gallbladder. (Rec. 328.) On November 2, 2006, Dr. Fox noted that Plaintiff was "doing great; no further pain." (Rec. 331.) Plaintiff was able to return full time to work on November 14, 2006. (Rec. 332.)

## B. PLAINTIFF'S CLAIM HISTORY

Prior to gallbladder surgery, Plaintiff produced her medical records to Broadspire in support of her claim for disability. (Rec. 33, 34.) On August 31, 2006, upon receipt of Plaintiff's medical records, Broadspire retained a gastroenterologist, Dr. Todd Eisner, to perform a physician review. (Rec. 229.) Broadspire presented Dr. Eisner with Plaintiff's medical records and job analysis worksheet from WGI. (Rec. 31.)

On September 15, 2006, Dr. Eisner issued his review, concluding:

> Although the claimant had complaints of pain and was noted to have ulcers, there is no evidence of severity or frequency of symptoms that would have precluded the claimant from working. Specifically, there is no evidence of [gastrointestinal] bleeding or significant nausea and/or vomiting.

(Rec. 230.)

Dr. Eisner's review also indicated that he consulted with Plaintiff's treating physician Dr. McCarty, who informed him:

> [T]he claimant was sick at times, some days it seemed like she was disabled, other days it seemed like she was not . . . . [S]ome days she had pain out of proportion to her examination.

*(Id.)*

On September 21, 2006, additional medical information from Plaintiff's physicians was forwarded to Dr. Eisner. Upon review of the additional information Dr. Eisner wrote:

> The information only supports a functional impairment that would preclude her from working on the day of the endoscopy due to sedation. Beginning however 08/24/2006 through the present time, there is no objective evidence that would support the claimant not being able to perform her own occupation . . . . Although the claimant complains of pain and was noted to have ulcers, there is no evidence of pain requiring the use of narcotics, vomiting, dehydration or electrolyte abnormalities that would

5

>     preclude her from working . . . . Additional clinical documentation that
>     might be helpful would be documentation of ongoing abdominal pain
>     requiring use of narcotics or vomiting associated with her symptoms . . . .
>     None of the medications she is taking would impact her ability to work and
>     the medical information does not support ongoing disability. ("September
>     21, 2006 Review")

(Rec. 234.)

On September 29, 2006, based upon Dr. Eisner's review, Broadspire denied Plaintiff's claim for short-term disability benefits. (Rec. 33-35.) The denial letter explained the materials reviewed, Dr. Eisner's September 21, 2006 Review, and the basis for the denial of STD benefits. Further, the letter explained the appeals process and the objective medical documentation needed to make a positive STD determination. (Rec. 34.) Specifically, the letter contained a request for the following information:

> Diagnostic Test Results, Functional Capacity Evaluations, Physical
> therapy notes, office notes, consultation notes, progress reports, current x-
> rays, CT scans and EMG[s] [which] support diagnosis and provides [more
> information on] specific functional abilities, including any and all
> restrictions and limitations.

On January 18, 2007, Plaintiff appealed the denial of benefits. Plaintiff's appeal did not provide the objective medical documentation requested by Defendants. (Rec. 39-42.) By this time, Aetna had replaced Broadspire as the claims administrator for the Plan. (Rec. 56.)

On March 16, 2007, in response to Plaintiff's appeal, Aetna retained another gastroenterologist, Dr. Jack Cohen, to conduct an additional physician review. (Rec. 237.) Dr. Cohen was provided with various documents including Plaintiff's Job Analysis Worksheet, medical records through her surgery as provided by Plaintiff, and Plaintiff's

6

appeal letter. *(Id.)* On March 19, 2007, Dr. Cohen issued a report in which he concluded that the materials submitted failed to support a functional impairment:

> The medical record fails to document any severity or intensity of symptoms which would preclude the claimant from performing job related activities of a medium physical exertion level . . . . [T]here was no associated nausea, vomiting, fevers, gastrointestinal bleeding, jaundice, weight loss, etc. There is documentation of the claimant's medications on prescription profile from 06/18/06 to 1/2/07 . . . . [N]one of these medications would impact upon the claimant's ability to work during the time frame in question.

(Rec. 241.)

As a result, Aetna denied Plaintiff's appeal. (Rec. 26-29.) In the denial letter, Aetna identified the information reviewed, Dr. Cohen's independent review, and the basis for the denial. Aetna further stated that Plaintiff's appeal "lack[ed] evidence to support a functional impairment" that would preclude the Plaintiff from performing her job duties. (Rec. 28.) Aetna gave Plaintiff 60 days to file a second appeal, and requested submission of:

> Detailed office consultation notes, abnormal diagnostic tests/imaging studies, abnormal test results and/or any other pertinent medical information that you or your providers feel would support a functional impairment that would preclude you from performing your job duties.

*(Id.)*

On July 9, 2007, Plaintiff filed a second appeal. (Rec. 45-53.) Plaintiff's appeal provided a summary of Plaintiff's medical records, but did not provide any additional medical data. (Rec. 51-52.) Plaintiff reiterated that she had been in pain, that the pain caused her inability to work, and that she could not demonstrate pain with anything other than subjective reports. *(Id.)* Upon receiving Plaintiff's second appeal, Aetna retained a third gastroenterologist, Dr. Steven Tawil. (Rec. 246-249.)

7

On July 27, 2007, Dr. Tawil reviewed Plaintiff's medical records, job description, prior physician review reports, and appeal letters. Dr. Tawil concluded that the documentation failed to support a functional impairment:

> The claimant never had [an] emergency room (ER) visit for pain, never complained of vomiting . . . . Although there were subjective abdominal complaints, there were no objective lab, x-ray, or exam findings supporting functional impairment on the days not involving procedures, surgery, or post-operational period. In patients with acalculous GB [gallbladder] pain there is no proof that surgery relieves the pain any more than non surgical treatment.

(Rec. 248.)

On August 21, 2007, Aetna upheld its denial of STD benefits to Plaintiff due to a lack of objective evidence. (Rec. 18.)

## II. PROCEDURAL HISTORY

Upon exhausting her administrative remedies, on April 29, 2009, Plaintiff initiated this action against Defendants. (Doc. # 1.) Defendants filed an Answer on June 10, 2009. (Doc. # 13.)

On September 11, 2009, Plaintiff filed a Motion and Brief in Support of Summary Judgment to Reverse Defendants' Decision to Deny Her Short-Term Disability Benefits. (Doc. ## 22, 23.) Defendants responded on October 5, 2009 (Doc. # 24) and filed a Cross Motion for Summary Judgment (Doc. # 25). Plaintiff filed Response and Reply Briefs on October 20, 2009. (Doc. ## 26, 27.) On September 8, 2010, Plaintiff filed a Request for Ruling on Motion for Summary Judgment, or Alternatively, Request for Pre Trial Conference. (Doc. # 41.)

8

## III. STANDARD OF REVIEW

Although both parties have filed Cross-Motions for Summary Judgment, as set forth in *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1579 n.31 (10th Cir. 1994), summary judgment is improper in actions seeking judicial review of the administrative record. Pursuant to *Olenhouse*, other district courts in the Tenth Circuit have determined that the summary judgment standard is not the proper means to resolve ERISA disputes. *See Stevens v. Metro. Life Ins.,* No. 05-cv-00563, 2006 U.S. Dist. LEXIS 76504, at *11 (D. Colo. Oct. 20, 2006) (collecting cases). "Instead, the court acts as an appellate court and evaluates the reasonableness of a plan administrator or fiduciary's decision based on the evidence contained in the administrative record." *Panther v. Synthes,* 380 F. Supp. 2d 1198, 1207 n.9 (D. Kan. 2005). Accordingly, this Court will not apply the traditional summary judgment standard of review to this dispute.[2]

The parties agree that this Court is to apply the arbitrary and capricious standard of review in determining whether the plan administrator erred in denying short-term disability benefits to Plaintiff. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (Where a plan grants discretion to an administrator, the arbitrary and capricious standard of review applies).

In applying the arbitrary and capricious standard, "the decision denying short-term disability benefits will be upheld so long as it is predicated on a reasoned basis." *Atkins v. SBC Commc'ns,* No. 05-5081, 2006 WL 2821370, at *4 (10th Cir. Oct. 4,

---

[2] Even if the traditional summary judgment standard of review applied, the Court has not premised its decision on any genuine issues of material fact.

9

2006). The administrator's decision need not be the only logical decision or the best decision, so long as it is reasonable. *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1098 (10th Cir. 1999).

In applying the arbitrary and capricious standard, the Tenth Circuit has recognized:

> Indicia of an arbitrary and capricious decision include [among other things], lack of substantial evidence. Substantial evidence is such that a reasonable mind might accept to support the conclusion reached by the decision maker. It requires more than a scintilla but less than a preponderance. In determining whether the evidence in support of the administrator's decision is substantial, [the reviewing court] must take into account whatever the record fairly detracts from its weight. Moreover, substantiality of the evidence is based upon the record as a whole.

*Rekstad v. U.S. Bancorp,* 451 F.3d 1114, 1119-20 (10th Cir. 2006) (internal quotations and citations omitted); *see also Caldwell v. Life Ins. Co. Of N. Am.,* 287 F.3d 1276, 1282 (10th Cir. 2002).

## IV. ANALYSIS

Plaintiff argues that Defendants' denial of benefits was arbitrary and capricious because it was not supported by substantial evidence in the record and Defendants ignored her treating physicians' records. For the reasons discussed below, the Court finds that Defendants' denial of benefits was reasonable, supported by substantial evidence, and is based on a fair reading of the Plan's definitions for disability.

### A. DEFENDANTS' REQUESTS FOR OBJECTIVE EVIDENCE

As previously discussed, Defendants requested submission of objective medical evidence to determine Plaintiff's eligibility for disability benefits under the Plan. (Rec.

10

18, 28, 34.) However, in response to each request, Plaintiff submitted only subjective evidence, namely further documentation of her complaints of pain.

Plaintiff contends that the subjective evidence in the record sufficiently establishes that she was disabled under the Plan's terms. (Doc. # 23 at 17.) In support, Plaintiff cites *Hidalgo v. Comcast Comprehensive Health and Welfare Plan,* No. 06-cv-01009, 2007 WL 2889707 (D. Colo. Sept. 28, 2007), a case that is entirely distinguishable from the instant dispute. In *Hidalgo*, the plan administrator relied on a purported lack of objective evidence to deny short-term disability benefits to a claimant who was diagnosed with severe osteoarthritis, fibromyalgia, schleroderma, and raynauds disease. *Id.* at *7. The court granted summary judgment in the plaintiff's favor and remanded the case to the insurance plan for further administrative review. *Id.* at *10. In pertinent part, the court determined that the defendant's denial of benefits was arbitrary and capricious for at least two reasons. First, the administrator ignored objective evidence concerning the plaintiff's non-fibromyalgia ailments. *Id.* Second, with respect to fibromyalgia, a disorder not diagnosable through laboratory or clinical tests, the administrator ignored the plaintiff's reports of pain and other symptoms. *Id.*

Unlike *Hidalgo*, the instant case does not deal with a disorder such as fibromyalgia, for which subjective reports of pain may adequately support a disability determination. Defendants do not dispute that Plaintiff suffered from pain. At least three physicians stated that Plaintiff suffered from biliary dyskinesia. However, the disabling nature of this disorder is evidenced by vomiting, fever, abdominal pain requiring use of narcotics, gastrointestinal bleeding, jaundice, severe nausea, and

11

weight loss.  (Rec. 230, 240.)  Defendants repeatedly requested this type of objective evidence, which Plaintiff never provided.  (Rec. 234, 240, 248.)

Plaintiff also cites to *Gaylor v. John Hancock Mut. Life Ins. Co.,* 112 F.3d 460 (10th Cir. 1997), which is also distinguishable from the instant dispute.  In *Gaylor*, the plan administrator denied disability benefits to a plaintiff with sciatic neuritis (degenerative changes to the spine) which, at the time, was unrecognizable through clinic or laboratory techniques*.  Id.* at 467.  Both parties' reviewing physicians agreed that the claimant suffered from a disabling condition.  *Id.*  In light of these facts, the court reversed the denial of benefits because the plan administrator's grounds for denial were "inadequate".  *Id.* at 468*.*

Unlike *Gaylor,* the instant case does not deal with a debilitating degenerative disease unverifiable by clinical or laboratory means.  Plaintiff has biliary dyskinesia which has verifiable symptoms.  The notes from Plaintiff's primary physicians show no acute abdominal findings, severe nausea, fever, vomiting, or gastrointestinal bleeding.  Further, Plaintiff's own treating physician, Dr. McCarty, told Dr. Eisner that, "[t]he claimant was sick at times, some days it seemed like she was disabled, other days it seemed like she was not."  (Rec. 230.)

**B.     DEFENDANTS' DECISION TO DENY BENEFITS DESPITE HER PHYSICIANS' TREATMENT RECORDS**

As previously noted, the question before the Court is not whether the administrator made the "correct" decision, but whether the decision was reasonable.  *Chalker v. Raytheon Co.,* No. 07-4069, 2008 WL 3843503, at *7 (10th Cir. Aug. 19, 2008) (unpublished).

In the instant case, Plaintiff contends that Defendants arbitrarily and capriciously ignored her physicians' treatment records. First, the Court notes that, nothing in ERISA requires plan administrators to give special deference to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 830-31 (2003). However, in actuality and as discussed below, Defendants' reviewing physicians, Drs. Eisner, Cohen, and Tawil all appear to have carefully reviewed Plaintiff's treatment records and found them to be unavailing.[3] In this case, the plan administrator reviewed Dr. McCarty's notes and determined they lacked objective clinical data to support his findings and that statements such as "[t]he claimant was sick at times, some days it seemed like she was disabled, other days it seemed like she was not," did not support Plaintiff's claim for disability . *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1099 (10th Cir. 1999)  (A rational plan administrator could find insufficient a physician's letter which does not contain clinical data for the conclusions reached).

On September 15, 2006, Dr. Eisner noted Plaintiff's medical records did not objectively substantiate that she suffered from severe or frequent symptoms that would demonstrate a functional impairment and preclude her from working. (Rec. 230.) Similarly, on March 22, 2007, Dr. Cohen concluded Plaintiff's medical records failed to objectively document such severe symptoms or side effects as would render her disabled. (Rec. 240.) Likewise, on July 27, 2007, Dr. Tawil found no objective findings

---

[3] Plaintiff also reported that she suffered from pneumonia on June 29, 2006.  (Rec. 49). On July 17, 2007, Defendants' retained internal medicine specialist, Dr. Dennis Mazal to review this condition.  (Rec. 242).  Dr. Mazal opined that the pneumonia was not disabling, and did not support a functional impairment that would have precluded Plaintiff from working.  (Rec. 244). Defendants clearly performed a full review of Plaintiff's medical history during the relevant time period.

13

to support a functional impairment, despite Plaintiff's complaints of abdominal pain. (Rec. 248.) Based on the separate opinions of these three physicians, the plan administrator determined there was a lack of objective evidence to support a finding of disability. *See Meraou v. Wiliams Co. LTD Plan,* No. 06-5051, 2007 WL 431515, at *6-*7 (10th Cir. Feb. 9, 2007). Defendants clearly articulated this determination and the basis therefor, in each of the denial letters. (Rec. 18, 28, 34.)

Finally, Plaintiff contends that the Defendants were arbitrary and capricious in their denial of benefits due to their reviewing physicians' lack of neutrality because of a possible financial incentive to deny benefits. (Doc. # 23 at 21.) However, to the extent Plaintiff asserts a conflict of interest, such a conflict is simply weighed as **a** factor in determining whether there is an abuse of discretion. *See Metro Life Ins. Co. v. Glenn,* 128 S. Ct. 2343, 2346 (2008). Such conflicts should not necessitate a *de novo* review. *Id.* at 2350. The instant circumstances do not suggest a higher likelihood that any purported conflict affected the benefits decision. *Id.* at 2351. Plaintiff's arguments to the contrary are unavailing and based on speculation.

In sum, Defendants' consideration of the etiology of Plaintiff's pain and request for objective support therefor was appropriate. Defendants retained three separate physicians to review Plaintiff's records and other evidence. All three physicians appear to have carefully reviewed the medical records and reports from Plaintiff's treating physicians and concluded that Plaintiff's medical records did not support a determination that Plaintiff was disabled, as that term was defined in the Plan. Defendants' determinations, and the reasons therefor, were clearly communicated to Plaintiff. (*See* Rec. 17-19, 26-29, 34-35.) Defendants' decision to give less weight to

the opinions of Plaintiff's treating physicians, after considering the evidence and lack thereof, differs from ignoring them. *Grosvenor v. Qwest Comm. Int'l, No.* 05-4061, 2006 WL 2076804, at *5 (10th Cir. July 27, 2006) (unpublished).

## V. CONCLUSION

Applying the aforementioned standards and upon consideration of Defendants' rationale, the Court finds that Defendants' denial of short-term disability benefits to Plaintiff was reasonable and not arbitrary and capricious. Accordingly,

IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. # 25.) is GRANTED;
2. In light of that decision, Plaintiff's Motion for Summary Judgment (Doc. # 22.) is DENIED; and
3. Plaintiff's Request for Ruling on Motion for Summary Judgment, or Alternatively, Request for Pre-Trial Conference (Doc. # 41.) is DENIED AS MOOT; and
4. This case is DISMISSED WITH PREJUDICE.

DATED: September __30__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge